UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KYLE JAMES BRISTOW,

       Plaintiff,                           Case No. 22-12350

vs.                                          HON. MARK A. GOLDSMITH

ANTHONY FORLINI,

       Defendant.
_____/

**OPINION & ORDER
DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER OR
PRELIMINARY INJUNCTION (Dkt. 3)**

Before the Court is Plaintiff Kyle Bristow's motion for a temporary restraining order or preliminary injunction (Dkt. 3). For the reasons that follow, the Court denies Bristow's motion.[1]

**I. BACKGROUND**

Bristow brings this action alleging that Mich. Comp. L. § 552.6a(1), which renders divorce complaints non-public until proof of service has been filed, is facially unconstitutional under the First and Fourteenth Amendments of the United States Constitution. Compl. (Dkt. 1).

Bristow is an attorney based in Macomb County, Michigan. Id. ¶ 7. His practice primarily consists of family law, and more specifically, contested divorce cases. Id. ¶ 8. Defendant Forlini is the Macomb County Clerk and is charged with maintaining court records for Michigan's Sixteenth Judicial Circuit Court for Macomb County. Mich. Ct. R. 8.105(B); Mich. Ct. R. 8.119(D).

---

[1] In addition to Bristow's motion, the briefing includes: Defendant Anthony G. Forlini's response (Dkt. 27), Bristow's reply to Forlini's response (Dkt. 28), Defendant the State of Michigan's response (Dkt. 35), Forlini's amended reply to the State's response (Dkt. 37), and supplemental briefs filed on behalf of each of the three parties (Dkts. 48, 51, and 52).

Mich. Comp. L. § 552.6a provides:

(1) Beginning October 1, 2022, a complaint for divorce filed with the court shall not be made available to the public until the proof of service has been filed with the court.

(2) An entity administering or providing services under part D of title IV of the social security act, 42 U.S.C. 651 to 669b, may access a complaint made nonpublic under this section.

According to the response filed by the State, the statute is intended to provide victims of domestic violence and abuse a temporary period to find "safe harbor" after filing for divorce. Mich. Resp. at PageID.298. Notably, the statute permits defendants and their attorneys of record to obtain a copy of the complaint before the filing of a proof of service. Forlini Decl. at PageID.490–492 (Dkt. 43); Mem. of State Court Admin. Office (Dkt. 43-2).

As a result of this law, Bristow asserts that he can no longer obtain newly filed divorce complaints from the State's Sixteenth Judicial Circuit Court for Macomb County unless proof of service has been filed with the Macomb County Clerk or he has entered his appearance as a party's attorney of record. Mot. at PageID.46. Bristow maintains that the statute inhibits his practice because it prevents him from expeditiously answering divorce complaints on behalf of his clients. Id. at PageID.47. Bristow identifies at least two occasions where he was unable to obtain a complaint filed with the Macomb County Clerk in a pending divorce case. Bristow Decl. ¶¶ 11-13 (Dkt. 54-1); 2d. Suppl. Bristow Decl. ¶¶ 3–16 (Dkt. 61-1).

Asserting that Mich. Comp. L. § 552.6a(1) runs afoul of his right of access to court records under the First and Fourteenth Amendments, Bristow filed a motion for a temporary restraining order and/or preliminary injunction pursuant to Fed. R. Civ. P. 65. He seeks an order to compel Forlini and all other county clerks in Michigan (i) to cease enforcing the statute and (ii) to make accessible to the public all filed divorce complaints, except those which are sealed in whole or in

2

part pursuant to Mich. Ct. R. 8.119(I). Mot. at PageID.61. The State intervened as a defendant shortly after Bristow initiated this action to defend the statute (Dkt. 30).

## II. ANALYSIS

The Court first addresses whether Bristow has standing to challenge the constitutionality of Mich. Comp. L. § 552.6a(1). Finding that he does, the Court proceeds to address the merits of Bristow's motion for a temporary restraining order or preliminary injunction.

### A. Standing

To establish standing, plaintiffs must demonstrate that: (i) they "have suffered an injury in fact . . . which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical"; (ii) there is "a causal connection between the injury and the conduct complained of"; and (iii) it is "likely . . . that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–561 (1992) (punctuation modified). The "mere denial of information," however, is insufficient to establish standing. Grae v. Corr. Corp. of Am., 57 F.4th 567, 569 (6th Cir. 2023). Rather, "to have standing, a plaintiff claiming an informational injury must have suffered adverse effects from the denial of access to information." Id. at 570; see id. at 571 (holding that plaintiff seeking to intervene on appeal to challenge sealing of documents by the trial court lacked standing, as plaintiff conceded that "he had not suffered any adverse effects" from the sealing).

Bristow has standing. He submits that his ability to access divorce complaints filed against current and prospective clients has been inhibited, to at least some degree, before he enters his appearance as the attorney of record in a given case. See 2d. Suppl. Bristow Decl. ¶¶ 3–16. He has described one matter in which an out-of-state client, without a credit card, was unable to access a divorce complaint against that client—which Bristow also could not obtain because he had not

3

yet entered his appearance as attorney of record in that case. Bristow's position in this case is, therefore, unlike the position of the plaintiff in Grae, who had sought "to vindicate the public's right of access to judicial records," but had admittedly not suffered any adverse effects resulting from his inability to access the documents at issue. See Grae, 57 F.4th at 569. Bristow has sufficiently asserted adverse effects resulting from his inability to access divorce complaints filed against his clients, and therefore, has demonstrated standing.

**B. Motion for Temporary Restraining Order or Preliminary Injunction**

To determine whether to grant a preliminary injunction or temporary restraining order, a district court must consider: (i) whether the movant has a strong likelihood of success on the merits; (ii) whether the movant would suffer irreparable injury without the injunction; (iii) whether issuance of the injunction would cause substantial harm to others; and (iv) whether the public interest would be served by the issuance of the injunction. Baker v. Adams Cnty./Ohio Valley Sch. Bd., 310 F.3d 927, 928 (6th Cir. 2002). These four factors "are factors to be balanced, not prerequisites that must be met." Hamad v. Woodcrest Condo. Ass'n, 328 F.3d 224, 230 (6th Cir. 2003).

**1. Likelihood of Success on the Merits**

Bristow contends that Mich. Comp. L. § 552.6a(1) violates his right of access under the First Amendment. See Mot. at PageID.47. The Court concludes that Bristow is unlikely to succeed on the merits of his asserted right of access claim under the First Amendment.

To determine whether the First Amendment guarantees a qualified right of access to a particular category of court records, courts apply the "experience and logic" test. In re Search of Fair Finance, 692 F.3d 424, 429 (6th Cir. 2012). In applying the "experience and logic" test, courts assess (i) whether the category of documents at issue has "historically been open to the press and

4

the general public" and (ii) whether public access to those records "plays a significant positive role in the functioning of the particular process in question." Id. (citing Press-Enterprise Co. v. Superior Court, 478 U.S. 1 (1986) (Press-Enterprise II)) (punctuation modified). A qualified right of access attaches where both prongs are met. Id. "Under a qualified right, sealing is appropriate if it is 'essential to preserve higher values' and is 'narrowly tailored' to serve such ends." Id. (quoting Press-Enterprise II, 478 U.S. at 9).

As Bristow points out, multiple circuit courts have held that there is a First Amendment right of access to civil complaints generally. See Mot. at PageID.51, 54–55 (citing Courthouse News Serv. v. Schaefer, 2 F.4th 318, 327 (4th Cir. 2021) (holding that the experience and logic prongs are met, in part, because public access to nonconfidential civil complaints "allows the public to participate in and serve as a check upon the judicial process") (punctuation modified); Courthouse News Serv. v. Planet, 947 F.3d 581, 591 (9th Cir. 2020) (Planet III) ("[A] qualified First Amendment right of access extends to timely access to newly filed [nonconfidential] civil complaints."); Detroit Free Press v. Ashcroft, 303 F.3d 681, 695 (6th Cir. 2002) (citing cases applying the experience and logic prongs to administrative hearings, civil trials, and other civil or administrative contexts)); see also Courthouse News Serv. v. N.M. Admin. Office of Courts, 53 F.4th 1245, 1263 (10th Cir. 2022) (holding that the experience prong is met because "historically, courts have openly provided the press and general public with access to civil complaints").

While the First Amendment has been recognized as protective of access to civil complaints generally, the focus here must be on divorce complaints. The Court addresses each of the two prongs of the "experience and logic" test in the context of divorce proceedings; it then considers whether the challenged statute is narrowly tailored to preserve higher values.

### a. Historical Access to Divorce Complaints

Bristow asserts that the "experience and logic" test is satisfied because "[f]iled divorce complaints in the State historically have been accessible to the general public as a matter of routine prior to October 1, 2022," when the statute went into effect. Mot. at PageID.52. The State does not disagree. See State of Mich. Resp. at PageID.300 ("Historically, divorce complaints were generally available for public access in Michigan before MCL 552.6a was enacted.").

Although as a general matter divorce complaints may have been accessible to the public prior to Mich. Comp. L. § 552.6a's enactment, a wider historical perspective demonstrates that divorce proceedings have traditionally been shielded in some measure from public view.[2] Defendants refer to cases evidencing historical restrictions on access to divorce proceedings to protect the privacy of the parties involved. See Nixon v. Warner Communications, Inc., 435 U.S. 589, 598 (1978) ("[T]he common-law right [to inspect and copy judicial records] has bowed before the power of a court to insure that its records are not 'used to gratify private spite or promote public scandal' through the publication of 'the painful and sometimes disgusting details of a divorce case.'") (quoting In re Caswell, 29 A. 259, 259 (R.I. 1893) (holding that a court clerk was not required to furnish a copy of a divorce case to a journalist)); Katz v. Katz, 514 A.2d 1374, 1380 (Pa. Super. Ct. 1986) (holding that "divorce hearings are the type of proceedings which courts may close to protect the rights of the parties").[3] These authorities demonstrate the historical acceptance

---

[2] As the United States Supreme Court guides, the "'experience' test of Globe Newspaper does not look to the particular practice of any one jurisdiction, but instead to the experience in that type or kind of hearing throughout the United States." El Vocero de Puerto Rico (Caribbean Int'l News Corp.) v. Puerto Rico, 508 U.S. 147, 150 (1993) (per curiam) (punctuation modified) (emphasis original).

[3] The State also cites Barber v. Conradi, 51 F. Supp. 2d 1257 (N.D. Ala. 1999), but this case does not support the existence of limitations on access to divorce complaints specifically. The plaintiff in this case was a member of an organization that advocated for fathers' rights and sought to

6

of restrictions on access to divorce complaints to protect significant interests, such as the privacy of the individuals involved.[4]

### b. Effect of Public Access to Divorce Complaints

The State asserts that "[b]ased on the established case law, public access in divorce cases does not play a significant role in the functioning of the family court." Mich. Resp. at PageID.310–311 (citing Katz, 514 A.2d at 1380 ("[T]he details of divorce involve matters which are essentially private in nature and . . . lack any useful, public purpose.")). The Court agrees that public access to a copy of a divorce complaint provides little benefit to the proper administration of divorce proceedings.

As an initial matter, the public has little to glean from a divorce complaint itself. Michigan's no-fault divorce regime, by definition, identifies no wrongdoing by the individuals involved. See Mich. Comp. L. § 552.6(1) (requiring that "plaintiff shall make no other explanation of the grounds for divorce than by the use of the statutory language"). Nor does a divorce complaint reveal information about the functioning of courts or government agencies or the alleged violations of private or public rights. Rather, divorce complaints merely mark the initiation of a

---

compile information about divorce cases that involved minor children. Barber, 51 F. Supp. 2d at 1259. The plaintiff wanted to review the paper filings of every divorce case filed over a one-year period in one particular county, which was approximately 4,200 cases in total. Id. Given the pressure placed on court employees by a request this large, the court limited the plaintiff to two hours of reviewing divorce cases per week until he finished the project. Id. at 1260. The court found that this was a constitutional restriction resembling a time, place, and manner restriction on protected speech. Id. at 1268. The fact that the plaintiff sought access to divorce proceedings specifically did not play a role in the court's analysis of the right-to-access claim.

[4] Indeed, courts in this district have further recognized that subject matters traditionally considered private, such as "[f]amily affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters[,] will weigh more heavily against access than conduct affecting a substantial portion of the public." United States v. Nallani, No. 11-CR-20365, 2016 WL 4138227, at *3 (E.D. Mich. Aug. 3, 2016) (punctuation modified).

legal process between private individuals. See id. Further, because Michigan law permits the unsealing of a divorce complaint after service on the defendant, see Mich. Comp. L. § 552.6a(1), the public is able to access the complaint during the pendency of the proceedings, and therefore, retains the ability to monitor the proceedings for fairness. See Detroit Free Press, 303 F.3d at 703–704 ("[P]ublic access acts as a check . . . by assuring us that proceedings are conducted fairly and properly.").

Importantly, any possible benefit the public might receive were it allowed access to a divorce complaint during the short time between its filing and service on the defendant is heavily outweighed by the benefit of protecting divorce plaintiffs from the threat of further abuse. As the State points out, sealing a divorce complaint between the time of its filing and service provides plaintiffs time to find safety while they are subject to a heightened risk of abuse. See State of Mich. Resp. at PageID.317. The statute thus plays a positive role in the functioning of the divorce proceeding by protecting those who choose to utilize it.

Bristow fails to identify how public access to divorce complaints before they are served plays a significantly positive role in such proceedings. Instead, Bristow largely frames his argument in terms of how the restriction impacts him or his clients. See Mot. at PageID.47, 53. Specifically, Bristow asserts that he is unable to obtain copies of divorce complaints from the Macomb County Clerk's office unless he has entered his appearance on behalf of a client. Id. at PageID.47. However, as Bristow acknowledges, he can still obtain a copy of the complaint by filing his appearance in the case. Id. at PageID.46. And his clients can do the same by visiting the clerk's office in person. Forlini Decl. at PageID.491–492. On balance, Bristow's interests, while impacted, are not substantially impeded.

8

Furthermore, those interests have little, if any, to do with the concern of the "logic" prong, i.e., the impact of a restriction to public access on the functioning of a government process. As the United States Court of Appeals for the Sixth Circuit Court has explained, this Court must assess whether the value of access plays a positive role in the proceeding at issue:

> [T]he value of access must be measured in specifics. Analysis is not advanced by rhetorical statements that all information bears upon public issues; what is crucial in individual cases is whether access to [a] particular government process is important in terms of that very process.

Detroit Free Press, F.3d at 701 (emphasis original) (quoting Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 589 (Brennan, J., concurring). Using the lens of the value of restricted access on the proper functioning of government processes, the Court is not convinced that the public's access to copies of filed divorce complaints before proof of service has been filed plays an important role in divorce proceedings—especially in light of the State's interest in protecting plaintiffs who risk abuse by virtue of their filing for divorce. See State of Mich. Resp. at PageID.317.

The cases upon which Bristow relies do not counsel otherwise. In Shaefer and Planet III, news service organizations sought access to all newly filed nonconfidential civil complaints that they deemed newsworthy. Shaefer, 2 F.4th at 327; Planet III, 947 F.3d at 590. In granting access to the complaints, both courts emphasized the beneficial impact of the public's ability to understand the facts of a civil case so that it could monitor and serve as a check on the proceedings. Shaefer, 2 F.4th at 327 ("Because they allow the public to understand the parties involved in a case, the facts alleged, the issues for trial, and the relief sought, access to complaints, . . . , is crucial to not only the public's interest in monitoring the functioning of the courts but also the integrity of the judiciary.") (punctuation modified); Planet III, 947 F.3d at 592 ("[P]ublic access to civil complaints before judicial action upon them plays a particularly significant role in the public's

9

ability to ably scrutinize the judicial process and the government as a whole.") (punctuation modified).

By contrast, here, under Michigan's no-fault divorce regime, divorce complaints do not contain detailed factual allegations about the subject matter of the complaint. See Mich. Comp. L. § 552.6(1). Coupled with the intensely private nature of the proceedings, such a complaint does not provide the public with the sort of "crucial" information for which access is an important check on the proceedings.

The Court concludes that Mich. Comp. L. § 552.6a(1)'s temporary restriction on the public's access to divorce complaints is both (i) supported by historical example and (ii) plays a significant positive role in the functioning of the divorce process because of the protection it provides to divorce plaintiffs at risk of abuse. Accordingly, the Court concludes that Bristow is unlikely to succeed in his contention that there is a First Amendment qualified right of access to divorce complaints before the filing of a proof of service.

### c. Restriction Narrowly Tailored

Even assuming that Bristow could establish that a qualified First Amendment right attaches under the "experience and logic" test, the Court finds it likely that Mich. Comp. L. § 552.6a(1) is constitutionally appropriate because it is narrowly tailored to "preserve the higher value[]" of protecting divorce plaintiffs from the heightened risk of violence or abuse. See In re Search, F.3d at 429.

The State has a strong interest in protecting divorce plaintiffs against the threat of violence or abuse. See, e.g., Stimmel v. Sessions, 879 F.3d 198, 207 (6th Cir. 2018) ("It is self-evident that the government interest of preventing domestic gun violence is important.") (punctuation modified). As the State details in its response, Mich. Comp. L. § 552.6a(1) aims to avoid the

"negative[] [e]ffect" of immediately rendering filed divorce complaints public for abused spouses attempting to find a safe space. Mich. Resp. at PageID.300 (citing House Leg. Analysis, HB 4195 (Mich. Feb. 10, 2022) (Dkt. 35-2)).

The State cites several tragic incidents of domestic violence highlighting the danger posed to victims of abuse shortly after leaving their abusers. Id. at PageID.300–302 (citing Nancy Kaffer, How could Faith Green's PPO request been denied? It's complicated, Detroit Free Press (Oct. 3, 2016) (Dkt. 35-6) (reporting the murder of domestic abuse victim shortly after the victim filed for divorce); Victor Williams, Woman killed by husband in Warren had recently left him, filed for divorce, family says, Click ON Detroit, (Oct. 12, 2020) (Dkt. 35-7) (reporting the murder of a woman around one month after she filed for divorce)).

In addition to these individual tragedies, the State points to studies finding that the most dangerous time period for domestic violence victims is shortly after they file for divorce. Id. at PageID.300–301 (citing Kent Cnty. Domestic Violence Cmty. Coordinated Response Team, Domestic Violence Homicide Review Case Analysis and Recommendation (March 2022) (Dkt. 35-3) (case study of a murder of a three-year-old child stating that the "most dangerous time for a victim of domestic violence is after the victim has left the relationship and is engaged in the process to remain independent of their abuser"); Jacquelyn C. Campbell et al., Risk Factors for Femicide in Abusive Relationships: Results from a Multisite Case Control Study, 93 Am. J. Pub. Health 1089, 1091 (2003) (Dkt. 35-5) (finding that "the worst incident of abuse was triggered by the victim's having left the abuser for another partner")).

Bristow does not challenge the sad history that triggered adoption of the statute. And given that Bristow may obtain a complaint after a proof of service has been filed, his asserted interest in obtaining the complaint at some earlier point in time is outweighed by the State's interest in

11

protecting divorce plaintiffs. See Barber, F. Supp. 2d at 1267 (holding as permissible under the First Amendment a delay in furnishing copies of complaints on the grounds that complaints would eventually be released and that the interest of public access must be balanced against government interests).

Bristow also argues that the statute is not narrowly tailored because it applies to all newly filed divorce complaints and "not only those which involve serious allegations of domestic violence." Am. Reply to Mich. Resp. at PageID.423. But this argument fails to account for Michigan's no-fault divorce regime under which the plaintiff is prohibited from providing any "explanation of the grounds for divorce than by the use of the statutory language." Mich. Comp. L. § 552.6(1). There is thus no basis from which to assess whether the divorce proceeding involves allegations of domestic violence.

Bristow further maintains that the statute is overbroad because it does not provide for a case-by-case determination of whether the complaint should be made nonpublic. Mot. at PageID.53. But a holding that the State must compel abused plaintiffs seeking to end their marriages to publicly accuse their abusive spouses of misconduct might well tragically ignite an already flammable domestic relationship. Such a requirement would likely deter plaintiffs from making such accusations out of fear of retribution from the defendant. Put simply, the case-by-case approach suggested by Bristow is no answer for the type of harm that the State intends to prevent.

Bristow points to In re Marriage of Burkle, in which a California court rejected an argument that "the same utilitarian values" that support the presumptive openness of criminal and civil trials "somehow lose their potency in the context of divorce proceedings." In re Marriage of Burkle, 37 Cal. Rptr. 3d 805, 816 (Cal. Ct. App. 2006) (punctuation modified).

12

Burkle is very different from the instant case. The statute at issue in that case broadly permitted the sealing of any divorce pleading listing the parties' financial assets and did not permit the unsealing of such records absent good cause. Id. at 808. Unlike the restriction in Burkle, Mich. Comp. L. § 552.6a(1) only temporarily renders divorce complaints non-public until they are served on the defendant. Moreover, while the statute in Burkle applied to any divorce pleading that divulged the parties' financial assets, Mich. Comp. L. § 552.6a(1) narrowly applies only to divorce complaints; it does not mandate sealing any other filing in the divorce proceeding. See Burkle, Cal. Rptr. 3d at 808.

The Court agrees with the State that Mich. Comp. L. § 552.6a(1) is narrowly tailored to preserve the higher value of protecting divorce plaintiffs subject to domestic violence or abuse. As the State points out, the statute applies only to divorce complaints. Mich. Resp. at PageID.313; see also Mem. re Nonpublic Divorce Compl. (Dkt. 35-13). Under the statute, both defendants and their attorneys of record may obtain a copy of the complaint before the filing of a proof of service. Forlini Decl. at PageID.491–492. Moreover, the restriction on the public applies only until the proof of service is filed. Mich. Comp. L. § 552.6a(1). Thus, the statute does not prejudice defendants or their attorneys in divorce proceedings. At bottom, the statute applies narrowly to allow divorce plaintiffs a temporary period of time to make arrangements to protect themselves from potential abuse.

In light of the above, the Court concludes that Bristow has not demonstrated a likelihood of success on the merits.[5]

---

[5] Although he does not assert it in his briefing, the Court recognizes that Bristow's demand for access also implicates his rights under the common law. The Court concludes that Bristow fares no better under this theory. "A common law right of access generally applies to all public records and documents, including judicial records and documents." In re Morning Song Bird Food Litig., 831 F.3d 765, 777–778 (6th Cir. 2016). Importantly, however, the common law "right to inspect

**2. Irreparable Harm, Substantial Harm to Others, and Public Interest**

"In cases implicating the First Amendment, the other three factors often hinge on" the determination of the likelihood of success on the merits. Liberty Coins, LLC v. Goodman, 748 F.3d 682, 690 (6th Cir. 2014). "Similarly, because the questions of harm to the parties and the public interest generally cannot be addressed properly in the First Amendment context without first determining if there is a constitutional violation, the crucial inquiry often is, . . . , whether the statute at issue is likely to be found constitutional." Id. (punctuation modified).

Bristow argues that he has suffered irreparable harm based on his asserted loss of First Amendment freedoms. Mot. at PageID.58. However, given the Court's determination that Mich. Comp. L. § 552.6a(1) likely does not offend Bristow's First Amendment rights, Bristow's argument fails. Bristow fares no better under the other two factors of substantial harm to others and public interest. As discussed, Bristow's requested relief risks harming the public by removing a legislative safeguard enacted to protect victims of domestic violence or abuse. Similarly, the public interest would also suffer from the removal of such protections. As a result, the factors considered by courts in the context of motions for preliminary injunctions or temporary restraining orders collectively weigh against granting Bristow's motion. See Baker, 310 F.3d at 928; Hamad, 328 F.3d at 230.

---

and copy judicial records is not absolute." In re Search, F.3d at 431 (punctuation modified). "[T]he common law presumption in favor of public access does not reach materials properly submitted to the court under seal or otherwise kept confidential for important policy reasons." In re Morning, F.3d at 778; see also Nallani, 2016 WL 4138227, at *1 ("The common-law presumption of access can be overcome if a sufficiently compelling countervailing interest is demonstrated."). Here, Bristow's common law right of access is outweighed by the State's important policy goal of protecting victims of domestic abuse during a time of a heightened threat of violence. Bristow's common law right of access provides no basis that he is likely to succeed in this case.

## III. CONCLUSION

For the foregoing reasons, the Court denies Bristow's motion for a temporary restraining order or preliminary injunction (Dkt. 3).

SO ORDERED.

Dated: April 26, 2023　　　　　　　　　　　　s/Mark A. Goldsmith
　　　　　Detroit, Michigan　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge